OPINION
On August 6, 1999, a Franklin County grand jury issued a three-count indictment against Thornetie Brittian.[1] She was charged with murder, involuntary manslaughter, and endangering children. The indictment alleged, inter alia, that Ms. Brittian purposely caused the death of two-month-old Maya[2] Hernandez, who was in Ms. Brittian's care on the date of the incident, July 8, 1999.
On February 5, 2001, Ms. Brittian entered a guilty plea to involuntary manslaughter, a felony of the first degree. After hearing the prosecution's recitation of the facts, the trial court accepted the plea, ordered preparation of a presentence investigation report and scheduled sentencing for a later date.
Pursuant to an entry journalized April 13, 2001, the trial court sentenced Ms. Brittian to a term of ten years' incarceration, the maximum sentence permitted by statute. The trial court formally entered a nolle prosequi as to the remaining counts of the indictment.
Thornetie Brittian (hereinafter "appellant") has timely appealed, assigning four errors for our consideration, although, to be precise, they are phrased in terms of propositions of law:
Assignment of Error No. 1:
 A trial court abuses its discretion when it sentences a criminal defendant to a maximum prison term, based upon defendant having had committed the offense while on probation, when defendant is not on probation at the time of the offense.
Assignment of Error No. 2:
 A trial court abuses its discretion and violates O.R.C. Section 2929.11 when it refuses to impose a minimum sentence based upon a standard that it would "demean the seriousness of the offense," as opposed to the proper standard of "not demeaning to the seriousness of the offender's conduct and its impact upon the victim.["]
Assignment of Error No. 3:
 A trial court abuses its discretion and violates O.R.C. Section 2929.12(E)(1) where, at sentencing, it fails to consider that a criminal defendant has not been adjudicated a delinquent child.
Assignment of Error Four No. 4:
 A trial court abuses its discretion and violates O.R.C. Section 2929.12(E)(3) where, at sentencing, it fails to consider that prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
Appellant's four assignments of error collectively challenge the trial court's imposition of the maximum sentence. Because of the analysis required of this court in assessing the legality of a maximum sentence, we address the assignments of error jointly. Any maximum sentence determination must inevitably be reconciled with the general concept codified in R.C. 2929.14(C), which speaks directly to the legality of maximum prison terms. That provision, as is relevant here, mandates that such sentences are authorized "* * *only upon offenders who committed the worst forms of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes * * *."
Preliminarily, however, we set forth the pertinent statutory guidelines by which a trial court is bound in sentencing criminal defendants generally. The legislature has codified the "purposes and principles of sentencing" in R.C. 2929.11 in pertinent part as follows:
 (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
 (B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. [Emphasis added.]
In accord with the mandates of R.C. 2929.11, R.C. 2929.12 enumerates "seriousness" and "recidivism" factors, which examine the "seriousness of the offender's conduct and its impact upon the victim" and the necessity of "protect[ing] the public from future crime" by the offender.
R.C. 2929.12(B) is directed at the "seriousness" determination, setting forth factors which might indicate that the offender's conduct is "more serious than conduct normally constituting the offense." In toto, these factors are:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion. [Emphasis added.]
Division (D) sets forth recidivism factors indicative of those offenders "who pose the greatest likelihood of committing future crimes," as follows:
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * * or under post-release control * * * for an earlier offense.
 (2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense. [Emphasis added.]
Turning again to the record before us, we look to discern whether the trial court sufficiently complied with the applicable sentencing considerations.
In its judgment entry journalizing appellant's conviction and sentence, the trial court included the following language, in pertinent part:
 The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14. * * *
* * *
 After imposing sentence[,] the Court gave its finding[s] and stated its reasons for the sentence as required by R.C. 2929.19(B)(2)(a)[,](b)[,] * * *(c)[,](d) and (e)[3]. The Court gave its reasons for imposing the maximum sentence of ten (10) years[,] finding that the offender committed the worst form of the offense and the Defendant poses the greatest likelihood of committing future like crimes. * * * [Entry at 1-2; emphasis added.]
In ascertaining the trial court's "findings" and "reasons" as alluded to in its entry, we turn to the transcript of the sentencing proceedings. The trial court again indicated that it had reviewed and considered "both the recent presentence investigation and sentencing memorandum filed on behalf of the defendant." The court then heard a victim-impact statement of Christina Hernandez, Maya's mother. Ms. Hernandez spoke in detail about the emotional torment she has endured as a result of losing her baby. Ms. Hernandez pleaded with the trial judge to impose the maximum sentence for involuntary manslaughter, particularly in light of the fact that appellant never faced trial for murder, the charge Ms. Hernandez believed was appropriate. While Ms. Hernandez clearly spoke as one might anticipate from a grieving mother, she also expressed what essentially amounted to hope that appellant might genuinely benefit from counseling and other opportunities available to her during a lengthy period of incarceration.
The prosecution echoed Ms. Hernandez's desire for imposition of the maximum sentence. The prosecution emphasized that this type of involuntary manslaughter should be deemed the "worst possible form of the * * * offense" because the baby was "two months old, totally helpless and totally dependent on [appellant] for care." (Tr. 5.)
In addition, the prosecution noted that the presentence investigation report revealed that "this is not the first time the defendant has been adjudicated guilty for inflicting serious physical harm on an infant." Finally, the prosecution opined that appellant had expressed no remorse for her actions. (Tr. 5-6.)
Appellant's trial counsel took issue with the prosecution's "lack of remorse" allegation characterizing it as a "blatant misstatement." According to defense counsel, appellant showed "extreme remorse from the day this happened." According to counsel, appellant "* * * went to the hospital after she called 911 to be there while Maya was there. She [appellant] has lived with this ever since. * * * I have known her for almost a year now, and she lives with this every day and she cries and cries." (Tr. 6-7.)
Defense counsel also presented statements from appellant's pastor, Michael Reeves, and indicated that appellant had the support of her friends, her family, and her church community, all of whom were present at the hearing. Pastor Reeves also attested to appellant's overwhelming remorse, and that he personally counseled appellant and her family, all of whom are seeking forgiveness on her behalf and an opportunity for rehabilitation.
Defense counsel explained that appellant still suffers effects from a brain injury she sustained in a bicycle accident in 1981, when she was thirteen years old. She was hospitalized for two months. According to counsel, Dr. Jeffrey Smalldon, a neuropsychologist, informed him that appellant continues to suffer "some functional brain impairment," which "manifests itself in various ways, such as poor judgment, possibly poor impulse control and frustration level as a result of something that is not her fault." (Tr. 10-11.)
Appellant made a statement on her own behalf. She repeatedly professed sorrow and remorse for both her family and the baby's family; as evidenced below, the trial court clearly deemed appellant's expressions of remorse to be quite genuine.
As indicated infra, appellant's four assignments of error are essentially a piecemeal challenge to purportedly separate and distinct errors in the sentencing process. Accordingly, since the trial judge's factual findings, reasoning, and ultimate conclusions during the sentencing hearing constitute the bases of this entire appeal, we deem it incumbent upon us to quote the trial judge's lengthy dissertation in analyzing appellant's circumstances and the applicable sentencing statutes. A review of this analysis reveals, at the very least, meticulous consideration of the unfortunate circumstances of the case:
 * * * The court has had a lot of information provided to me, and ha[s] taken a lot of time to think about this particular case and the appropriate sentence. You clearly have been left with both a supportive family and community within the church here, people who know you. I have received letters both from people who find you to be religious and respectful, find it difficult to believe or even imagine that you would be capable of causing the death of an infant * * *. And I certainly do not dispute that you are a good person.
 The issue is, however, the appropriate sentence, given all of the factors in this particular case, those included in your sentencing memorandum, the information provided by Dr. Smalldon, as well as the information shared with the court by your lawyer, by your pastor, and the information in the presentence investigation.
 The information contained in that presentence investigation and the sentencing memorandum provide[s] at least three different versions as to how this tragic incident occurred. Two versions are provided by you at the hospital. And now a third version has surfaced through your evaluation by Dr. Smalldon.
 This third version is a version admittedly never told to the police by you. It involves you falling with the baby to the ground after its alleged fall from the couch to the floor. These three versions given by you, frankly, cause the court to question the veracity of your claim that these injuries suffered by Maya were a result of an accidental fall.
 The court believes that something quite different happened. I'm persuaded by * * * Dr. Fardal [deputy coroner] that this fatal injury was a result of either a blow to the head or some blunt force trauma to Maya's fall. It is Dr. Fardal's opinion that such a fatal injury couldn't have resulted from a mere fall. And that medical opinion has not been disputed.
 The court must following [sic] specific sentencing criteria in effect at the time of this incident. The factors the court are [sic] to consider is [sic] whether the incident is serious, and whether recidivism is likely. And it's undisputed as well this is a serious incident, and you recognize that.
 The court finds that this is a serious incident based on the fact that the injury to the victim was worsened due to her young age. She was two months old. The fact that the victim suffered physical harm, that is, that she died at the hands of the defendant while in her care, and that you held a position of trust. That the trust, this position was related to that position of trust, Maya was entrusted to your care, and you had a duty to care for her and keep her from harm's way. The court finds that this is a serious offense.
 The court also needs to address whether recidivism is likely. There are many here who want to take steps and assist the court in making sure that such an incident doesn't recur. The court has taken into consideration the fact that this incident occurred while you were on probation for the offense of negligent assault on a 14-month[-]old child. According to this report, the presentence investigation indicates that an order in was issued for the arrest of the defendant in 1993, that the sentence was enforced on that case July 28, 1999, which would indicate that she —
 [DEFENSE COUNSEL]: That is a misprint, Your Honor. That was enforced in 1993. I meant to bring that to the court's attention. That is not correct. That is not correct. That was not enforced in `99. That is a typo.
 [THE COURT]: If it's a typo, that is something that we'll need to obviously review. But the presentence investigation states that, and you stated that is incorrect; is that right?
 [DEFENSE COUNSEL]: * * * That is a typo. That sentence was enforced in 1993. That is well over and done with. She was not under any kind of sanctions at this time, and the records will bear that out.
 [THE COURT]: All right. You may provide that information to the court. You do have a prior adjudication and a history of criminal convictions, that being that misdemeanor offense of negligent assault, which is a prior conviction of physical assault on a child.
 Apparently you failed to respond favorably in the past to sanctions imposed by the court at that time, and that we now have this second offense. Harm, serious harm was suffered by a young child while in your care.
 That court is considering the information provided by Dr. Smalldon, who does state that you do have have suffered mild brain injury due to the result of this incident that occurred when you were a child. He says that based on that, there is some impulsive behavior that needs to be dealt with. And the recommendation to the court is that, regardless of the sentence imposed by the court, that you get some counseling in that area.
 The court finds, otherwise, that the information provided by Dr. Smalldon, as you were able to complete high school, you went into some other higher education courses that you tried after graduation and successfully completed some of those and, otherwise, been able to function in society.
 I find that this mild brain injury as described by Dr. Smalldon is of little mitigating value to this particular incident. The court is placing great weight on the fact that you previously have been convicted of negligent assault on a 14-month[-]old child. And the court finds that recidivism is likely.
 In taking those factors into consideration, finding that recidivism is likely and that this is a serious offense, it's impossible for you to rebut the presumption that the court would impose a prison term, and the issue for the court is the appropriate prison term given the circumstances in this case.
 Although this is your first prison term, a minimum sentence, the court feels, must not be imposed, because it would demean the seriousness of the offense, and the offense resulting in this loss of life. In taking everything into consideration and placing weight, as the court has said, on the criteria mentioned by the court, and I am assuming [defense counsel] can dispute the fact that this presentence investigation indicates that you were not still on probation at the time this incident occurred.
* * *
I'm imposing a sentence assuming that is correct. * * *
* * *
 The court * * * additionally finds that you must have been uncooperative in completing that probation, as the court had to order you in for that probation to be completed. And I have asked your counsel if he disputes that information in the presentence investigation, he's indicating that he is not.
* * *
 [The presentence investigation report] states that the report from North Mental Health Services states she's suspicious and confused in the sessions. She had to be offered direction in the session, demeaning injury to the child. It's important to note that she states as well in that particular incident that the child fell off a couch. And she states and it states that the defendant did attend all scheduled sessions except for one and was terminated from counseling.
 In taking all of that into consideration, Miss Brittian, the court on a previous occasion, the municipal court, had tried to deal with these same issues that you present yourself to the court here today to have. They tried to deal with the situation where if probation could have been successfully completed, maybe we could have avoided this situation that you find yourself in here today.
 In taking into consideration your history while on probation, the fact that this is your second incident involving injury to a child, the fact that this child lost its life, the court finds that anything less than a maximum sentence would demean the seriousness of the offense and finds such based on the following:
 The court finds this is the worse [sic] form of the offense, a small, defenseless and innocent victim has lost her life as a result of blunt trauma to her head, an injury which could not have occurred in any of the three versions that you have stated to the court. I believe that you are remorseful, but you are not accepting responsibility for this incident.
 The court believes that based on the finding that recidivism is likely, that a maximum period of incarceration is warranted to protect other children. Two have been injured by your hands. The court wants to ensure a third is not.
 10 years of incarceration is not excessive when weighed against the taking of a fragile life under these circumstances. * * * [Tr. 13-22; emphasis added.]
We find no error by the trial court in the sentencing of appellant. The trial judge more than adequately complied with the sentencing statutes by articulating detailed findings in support of the imposition of the maximum sentence. As exhaustively quoted above, the trial judge methodically considered each statutory factor deemed relevant and especially significant. Furthermore, we note that the statutory framework for felony sentencing does not confine judges to consider only those specifically-enumerated factors; a judge is additionally authorized to consider "any other factors that are relevant to achieving [the] purposes and principles of sentencing." R.C. 2929.12(A).
The trial judge explained that the maximum sentence imposed was commensurate with the seriousness of appellant's conduct and its impact upon the victims. While appellant pled guilty to a single count of involuntary manslaughter for the death of one person, baby Maya was hardly the only "victim" in this case; the baby left behind surviving family members to mourn her, especially her mother, as evinced by her statement to the court. The court repeatedly stated, and pointed to facts and circumstances in support thereof, that any other sentence would demean the seriousness of the offense committed by appellant.
With respect to the "seriousness" inquiry, R.C. 2929.12(B) requires consideration of factors tending to show that the offender's conduct "is more serious than conduct normally constituting the offense." We make the rather apparent observation that while any manslaughter, like murder, necessarily results in "serious" physical harm to its direct victim, the "seriousness" or "gravity of harm" consideration also may include the serious or grave suffering the victim endures preceding actual death. Baby Maya had two separate skull fractures caused by blunt force trauma, and there is no indication in the record that her death was instantaneous. As the trial judge noted, the "seriousness" factor simply cannot be refuted.
The court also considered the necessity of punishing appellant and protecting the public from potential future danger, thereby implicating the recidivism factors. As with the other sentencing considerations, the court spoke directly to recidivism and, again, provided ample and appropriate rationale and conclusions based upon the record in its entirety. As emphasized in our reiteration of the judge's lengthy comments, the judge was particularly concerned about appellant's prior conviction involving harm to a young child; we deem this particular concern well-placed and appropriately factored into the sentencing equation.
Finally, to the extent not otherwise specifically addressed herein, we address briefly the "piecemeal" challenges to appellant's sentence assigned as four separate errors on appeal.
Appellant's first assignment of error claims that the trial court abused its discretion when it considered as a "factor" that appellant committed the instant offense while on probation when, in fact, appellant was not. A cursory reading of the sentencing transcript, particularly at page 19, enables us to summarily dismiss such a claim. The trial court expressly stated that it would not rely on the "typo" regarding appellant's prior probation; instead, the court stated on the record that it would rely upon defense counsel's word that this information was incorrect.
Appellant's second assignment of error contends that the trial court abused its discretion when it refused to impose a minimum sentence upon appellant. This alleged error is also summarily rejected. The trial court's findings, analyzed in their entirety, satisfy the statutory requirements for imposition of more than a minimum sentence.
Appellant's third and fourth assignments of error are similarly overruled. These alleged errors claim that the trial court abused its discretion in failing to consider two "mitigating" factors: first, that appellant "ha[d] not been adjudicated a delinquent child" and, second, that she had, "prior to committing the [instant] offense * * * led a law-abiding life for a significant number of years." Appellant claims that since the trial court failed to state on the record the existence of these particular mitigating factors, the case must be remanded.
R.C. 2929.12(E) does indeed set forth several potentially mitigating factors which might weigh against recidivism. In the body of her argument, appellant focuses only upon a single possibility — the claim that she "had led a law-abiding life" for an allegedly "significant number of years." R.C. 2929.12(E)(3). Appellant acknowledges that this "significant number of years" was comprised of the time between her 1993 conviction (for harming a child, as discussed at length above) and the time of her instant offense, the 1999 killing of a baby. We agree that the trial court did not state, verbatim, on the record that it considered this as a mitigating factor. However, assuming arguendo the veracity of appellant's claim, one might surmise that the trial court did not deem a period of approximately six years a "significant number of years" for purposes of this mitigation statute. We find no abuse of discretion here.
In sum, our careful review of this record reveals an extremely thorough consideration of the relevant factors and circumstances and, in turn, an appropriate, corresponding analysis supporting the sentence imposed by the trial court. Accordingly, the assignments of error are overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.
[1] A few portions of the record and appellate counsel's brief refer to the defendant's last name as "Brittain," and a BCI document indicates her first name is "Thornette." For the sake of accuracy, we adhere to the consistent spelling of her name, "Thornetie [or `Netie'] Brittian" as indicated in the indictment, most pleadings, trial court entries and the transcripts of proceedings.
[2] Again, spelling inconsistencies abound. The indictment itself refers to the child-victim variously as both "Mya" and "Myua," even within the same sentence. Other portions of the record, however, clarify that the child's first name is spelled "Maya."
[3] Only subsection (e) of R.C. 2929.19(B)(2) applies in this case, which requires the trial court to "make a finding that gives its reasons for selecting the sentence" when it imposes the maximum prison term allowed by statute.